Consolidated Case Nos. 10-2271 (L), 10-2273 & 10-2321

# In the United States Court of Appeals
# for the Fourth Circuit

---

TIRE ENGINEERING &
DISTRIBUTION, LLC, *et al.*,

*Plaintiffs-Appellees/Cross-Appellants*,

v.

SHANDONG LINGLONG RUBBER CO., LTD., *et al.*,

*Defendants-Appellants/Cross-Appellees.*

---

On Appeal From The United States District Court For
The Eastern District of Virginia

---

## PRINCIPAL BRIEF OF DEFENDANTS-APPELLANTS

---

Peter D. Keisler
Richard Klingler
James C. Owens, Jr.
Bryson Love Bachman
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 736-8000
Facsimile:   (202) 736-8711

*Counsel for Al Dobowi Ltd., Al Dobowi
Tyre Co., LLC, TyreX International,
Ltd., and TyreX International Rubber
Co., Ltd.*

R. Ted Cruz
  *Counsel of Record*
Howard M. Radzely
William S.W. Chang
Shelly M. Doggett
MORGAN, LEWIS & BOCKIUS
  LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  (202) 739-3000
Facsimile:   (202) 739-3001

*Counsel for Shandong Linglong Rubber
Co., Ltd., n/k/a Linglong Group Co.,
Ltd., and Shandong Linglong Tire Co.,
Ltd.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

### <u>LINGLONG</u>

Pursuant to FRAP 26.1 and Local Rule 26.1, Appellants Shandong Linglong Rubber Co., Ltd., and Shandong Linglong Tire Co., Ltd., ("Linglong") make the following disclosures:

1.     Shandong Linglong Rubber Co., Ltd., changed its name to Linglong Group Co., Ltd.  Neither Linglong Group Co., Ltd., nor Shandong Linglong Tire Co., Ltd., are publicly held corporations or other publicly held entities;

2.     Linglong Group Co., Ltd., has no parent corporation, but is the parent of Shandong Linglong Tire Co., Ltd.;

3.     No publicly held corporation or other public entity owns ten percent or more of the stock of Linglong Group Co., Ltd.;

4.     No publicly held corporation or other publicly held entity has a direct financial interest in the outcome of the litigation;

5.     Neither Linglong Group Co., Ltd., nor Shandong Linglong Tire Co., Ltd., are trade associations; and

6.     This case does not arise out of a bankruptcy proceeding.

### <u>AL DOBOWI</u>

Pursuant to FRAP 26.1 and Local Rule 26.1, Appellants Al Dobowi, Ltd., and Al Dobowi Tyre Co., LLC, make the following disclosures:

1.      Al Dobowi, Ltd., and Al Dobowi Tyre Co., LLC, are not publicly held corporations or other publicly held entities;

2.      Al Dobowi, Ltd., and Al Dobowi Tyre Co., LLC, have no parent corporations;

3.      No publicly held corporation or other public entity owns ten percent or more of the stock of either Al Dobowi, Ltd., or Al Dobowi Tyre Co., LLC;

4.      No publicly held corporation or other publicly held entity has a direct financial interest in the outcome of the litigation;

5.      Neither Al Dobowi, Ltd., nor Al Dobowi Tyre Co., LLC, are trade associations; and

6.      This case does not arise out of a bankruptcy proceeding.

## **TYREX**

1.      TyreX International, Ltd., and TyreX International Rubber Co., Ltd., are not publicly held corporations or other publicly held entities;

2.      TyreX International, Ltd., has no parent corporation, but is the parent of TyreX International Rubber Co., Ltd.;

3.      No publicly held corporation or other public entity owns ten percent or more of the stock of TyreX International, Ltd.;

4.      No publicly held corporation or other publicly held entity has a direct financial interest in the outcome of the litigation;

5.      Neither TyreX International, Ltd., nor TyreX International Rubber Co., Ltd., are trade associations; and

6.      This case does not arise out of a bankruptcy proceeding.

# TABLE OF CONTENTS

**Page**

Corporate Disclosure Statement ............................................................i

Table Of Contents ............................................................ iv

Table Of Authorities ............................................................ vi

Jurisdictional Statement ............................................................1

Statement Of The Issues ............................................................1

Statement Of The Case ............................................................3

Statement Of The Facts............................................................5

Summary Of The Argument ............................................................8

Argument............................................................10

    I.    Standard Of Review ............................................................10

    II.    Plaintiffs' Claims Focus Overwhelmingly On Acts Abroad, Requiring Dismissal Of Plaintiffs' Copyright And Lanham Act Claims And Depriving The District Court Of Personal Jurisdiction Over The Defendants And Claims ...............................11

        A.    The Copyright Claim Should Be Dismissed Because The Copyright Act Does Not Have Extraterritorial Effect And The Only Alleged Violation Of The Act In The United States Is Time-Barred................................................11

            1.    No Domestic Acts Support A Copyright Claim............12

            2.    Defendants' Acts Abroad Do Not Support A Copyright Claim ............................................12

        B.    The Lanham Act Does Not Extend To The Extraterritorial Trade At Issue ............................17

        C.    The District Court Lacked Personal Jurisdiction Over The Foreign Defendants............................22

# TABLE OF CONTENTS
## (continued)

**Page**

III.   Plaintiffs' Claims Address Alleged Exploitation Of Intangible Rights, Requiring Dismissal Of Several Claims As Preempted By The Copyright Act, Dismissal Of The Conversion Claim, Vacation Of The Damages Award, And Reversal Of The Copyright Verdict For Failure To Register Many Of The Blueprints ................................................................................27

    A.   The Copyright Act Preempts Plaintiffs' Conspiracy And Conversion Claims ................................................................28

        1.   Plaintiffs' Conspiracy To Infringe Copyright Claim Is Preempted ......................................................29

        2.   Plaintiffs' Conversion Claim Relating To Intangible Rights Is Preempted.....................................33

    B.   Virginia Law Does Not Recognize The Conversion Of Intangible Property Rights Simply Because Those Rights Are Expressed In A Copied Document...................................39

    C.   There Is No Evidence Supporting Damages For Conversion ..............................................................................44

    D.   Copyright Liability Also Cannot Stand Because The Verdict And The Damages Award Impermissibly Rest In Part On The Copying Of Unregistered Designs .....................48

IV.   The Damages Award And The Conspiracy Verdict Must Be Vacated Because Each Rests On Dismissed Theories Of Liability ................................................................................51

    A.   The Damages Award Must Be Vacated................................52

    B.   The Conspiracy Verdict Must Be Vacated ...........................56

Conclusion .............................................................................................57

Request For Oral Argument....................................................................57

Certificate Of Compliance With Rule 28.1(e) Or 32(a) ........................58

Certificate Of Service.............................................................................59

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*3D Global Solutions, Inc. v. MVM, Inc.*,
 552 F. Supp. 2d 1 (D.D.C. 2008)..................................................................40

*Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*,
 955 F. Supp. 220 (S.D.N.Y.),
 *aff'd*, 152 F.3d 948 (1997)........................................................................21

*Alliance for Telecomm. Indus. Solutions, Inc. v. Hall*,
 Civil No. CCB-05-440, 2007 WL 3224589
 (D. Md. Sept. 27, 2007) ............................................................................38

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*,
 293 F.3d 707 (4th Cir. 2002) ......................................................................22

*Aqua Bay Concepts, Inc. v. Grosse Point Bd. of Realtors*,
 24 U.S.P.Q.2d 1372 (E.D. Mich. 1992) ................................................31, 32

*Asahi Metal Indus. Co. v. Super. Court*,
 480 U.S. 102 (1987)...................................................................................27

*Atlantic Richfield Co. v. Arco Globus Int'l Co.*,
 150 F.3d 189 (2d Cir. 1998) .......................................................................18

*Barber v. Whirlpool Corp.*,
 34 F.3d 1268 (4th Cir. 1994) ......................................................3, 52, 53, 56

*Berge v. Bd. of Trustees for the Univ. of Ala.*,
 104 F.3d 1453 (4th Cir. 1997) .............................................. 29, 34, 35, 36, 37

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
 155 F.3d 331 (4th Cir. 1998) ......................................................................52

*Burns v. Imagine Films Entm't, Inc.*,
 No. 92-CV-2438, 2001 WL. 34059379 (W.D.N.Y. Aug. 23, 2001).............15

*CFA Inst. v. Inst. of Chartered Fin. Analysts of India*,
 551 F.3d 285 (4th Cir. 2009) ......................................................................10

*Christopher Phelps & Assocs., LLC v. Galloway*,
 492 F.3d 532 (4th Cir. 2007) ............................................................34, 47, 49

*Combined Ins. Co. of Am. v. Wiest*,
 578 F. Supp. 2d 822 (W.D. Va. 2008)..........................................................35

vi

## TABLE OF AUTHORITIES
(continued)

**Page**

*Compaq Computer Corp. v. Ergonome, Inc.*,
    No. Civ.A. H-97-1026, 2001 WL 34104826
    (S.D. Tex. June 27, 2001) ....................................................................15, 16

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
    561 F.3d 273 (4th Cir. 2009) .............................................. 10, 22, 23, 26, 27

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp*,
    606 F.3d 612 (9th Cir.), ,
    *cert. denied*, 131 S. Ct. 686 (2010)................................................................49

*CoStar Group, Inc. v. LoopNet, Inc.*,
    373 F.3d 544 (4th Cir. 2004) ......................................................................31

*Daboud v. Gibbons*,
    42 F.3d 285 (5th Cir. 1995) ...................................................................29, 34

*Dielsi v. Falk*,
    916 F. Supp. 985 (C.D. Cal. 1996).............................................................36

*Ehat v. Tanner*,
    780 F.2d 876 (10th Cir. 1985) ...................................................................29

*Ely v. Blevins*,
    706 F.2d 479 (4th Cir. 1983) ................................................................51, 56

*Fed. Ins. Co. v. Lake Shore Inc.*,
    886 F.2d 654 (4th Cir. 1989) ......................................................................27

*Flowers v. Tandy Corp.*,
    773 F.2d 585 (4th Cir. 1985) ................................................................51, 52

*FMC Corp. v. Capital Cities/ABC, Inc.*,
    915 F.2d 300 (7th Cir. 1990) ......................................................................43

*Geoscan, Inc. of Tex. v. Geotrace Techs., Inc.*,
    226 F.3d 387 (5th Cir. 2000) ......................................................................49

*Hawkins v. Upjohn Co.*,
    890 F. Supp. 601 (E.D. Tex. 1994) ...........................................................24

*Henderson v. Winston*,
    No. 94-2071, 1995 WL 378602 (4th Cir. June 27, 1995) ......................53, 57

# TABLE OF AUTHORITIES
(continued)

**Page**

*Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales, Inc.*,
223 F. Supp. 2d 953 (N.D. Ill. 2002)..............................................32

*Hinkle Oil & Gas, Inc. v. Bowles Rice McDavid Graff & Love LLP*,
617 F. Supp. 2d 447 (W.D. Va. 2009),
*aff'd*, 360 F. App'x 400,
*cert. denied*, 131 S. Ct. 82 (2010)............................................41, 42

*Hoey v. Dexel Sys. Corp.*,
716 F. Supp. 222 (E.D. Va. 1989) ..............................................32

*Hotaling v. Church of Jesus Christ of Latter-Day Saints*,
118 F.3d 199 (4th Cir. 1997) ..................................................16, 17

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*,
307 F. Supp. 2d 521 (S.D.N.Y. 2004) ........................................49

*Int'l Bancorp, LLC v. Societé des Bains de Mer et du
Cercle des Etrangers à Monaco*,
329 F.3d 359 (4th Cir. 2003) ..................................................18, 19

*Iverson v. Grant*,
133 F.3d 922 (Table), 1998 WL 2887
(8th Cir. 1998) ......................................................................13

*Johnson v. Wal-Mart Stores, Inc.*,
No. 98-2087, 1999 WL 314660
(4th Cir. May 19, 1999)..........................................................53

*Kindergartners Count, Inc. v. DeMoulin*,
171 F. Supp. 2d 1183 (D. Kan. 2001) ........................................37

*Kipperman v. McCone*,
422 F. Supp. 860 (N.D. Cal. 1976)............................................24

*L.A. News Serv. v. Reuters Television Int'l, Ltd.*,
340 F.3d 926 (9th Cir. 2003) ..................................................15

*L.A. News Serv. v. Reuters Television Int'l, Ltd.*,
149 F.3d 987 (9th Cir. 1998) ............................................14, 15, 17

*L.A. News Serv. v. Reuters Television Int'l, Ltd.*,
942 F. Supp. 1265 (C.D. Cal. 1996),
*aff'd in part, rev'd in part*, 149 F.3d 987 (1998)..........................15

## TABLE OF AUTHORITIES
(continued)

**Page**

*Liberty Toy Co. v. Fred Silber Co.*,
149 F.3d 1183 (Table), 1998 WL 385469
(6th Cir. 1998) ......................................................................13

*Litecubes, LLC v. N. Light Prods., Inc.*,
523 F.3d 1353 (Fed. Cir. 2008) ...........................................13

*Lolavar v. de Santibanes*,
430 F.3d 221 (4th Cir. 2005) ...............................................24

*Maryland v. Baldwin*,
112 U.S. 490 (1884)........................................................51, 56

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986).............................................................46

*McBee v. Delica Co.*,
417 F.3d 107 (1st Cir. 2005)...........................18, 19, 20, 21

*McLaughlin v. McPhail*,
707 F.2d 800 (4th Cir. 1983) ...............................................24

*MicroStrategy, Inc. v. Bus. Objects, S.A.*,
429 F.3d 1344 (Fed. Cir. 2005) ...........................................35

*Morrison v. Nat'l Austl. Bank Ltd.*,
130 S. Ct. 2869 (2010)...................................................14, 18

*Nintendo of Am., Inc. v. Aeropower Co.*,
34 F.3d 246 (4th Cir. 1994) ..................... 13, 18, 19, 20, 30, 34

*Noble Sec. Inc. v. MIZ Eng'g, Ltd.*,
611 F. Supp. 2d 513 (E.D. Va. 2009)...............................24, 25

*Palmer v. Braun*,
376 F.3d 1254 (11th Cir. 2004) ...........................................13

*Patrick v. Francis*,
887 F. Supp. 481 (W.D.N.Y. 1995)......................................37

*People for the Ethical Treatment of Animals v. Doughney*,
263 F.3d 359 (4th Cir. 2001) ...............................................18

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Peter Letterese & Assocs., Inc. v. World Inst. of*
  *Scientology Enters., Int'l,*
  533 F.3d 1287 (11th Cir. 2008) ...................................................16

*Prather v. Neva Paperbacks, Inc.,*
  446 F.2d 338 (5th Cir. 1971) ......................................................16

*Reed Elsevier, Inc. v. Muchnick,*
  130 S. Ct. 1237 (2010)................................................................49

*Robert Stigwood Group Ltd. v. O'Reilly,*
  530 F.2d 1096 (2d Cir. 1976) .....................................................14

*Robinson v. Equifax Info. Servs., LLC,*
  560 F.3d 235 (4th Cir. 2009) ...............................................10, 11

*Rosciszewski v. Arete Assocs., Inc.,*
  1 F.3d 225 (4th Cir. 1993) .............................. 29, 31, 34, 35, 36, 37

*Sheldon v. Metro-Goldwyn Pictures Corp.,*
  106 F.2d 45 (2d Cir. 1939),
  *aff'd,* 60 S. Ct. 681 (1940) ........................................................14

*Sheldon v. Metro-Goldwyn Pictures Corp.,*
  7 F. Supp. 837 (S.D.N.Y. 1934),
  *rev'd on other grounds,* 81 F.2d 49 (2d Cir. 1936) .....................15

*Sloas v. CSX Transp. Inc.,*
  616 F.3d 380 (4th Cir. 2010) ......................................................10

*St. Luke's Cataract & Laser Inst., P.A. v. Sanderson,*
  573 F.3d 1186 (11th Cir. 2009) ..................................................49

*Subafilms, Ltd. v. MGM-Pathe Commc'ns, Co.,*
  24 F.3d 1088 (9th Cir. 1994) (*en banc*)............................13, 14, 15

*Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co.,*
  370 U.S. 19 (1962).........................................................51, 53, 56

*Tegg Corp. v. Beckstrom Elec. Co.,*
  650 F. Supp. 2d 413 (W.D. Pa. 2008) .........................................32

*Totalplan Corp. of Am. v. Colborne,*
  14 F.3d 824 (2d Cir. 1994) .........................................................21

## TABLE OF AUTHORITIES
(continued)

**Page**

*United States v. Cartwright*,
411 U.S. 546 (1973) .......................................................46

*Update Art, Inc. v. Modiin Pub., Ltd.*,
843 F.2d 67 (2d Cir. 1988) ................................13, 14, 15

*Vanity Fair Mills, Inc. v. T. Eaton Co.*,
234 F.2d 633 (2d Cir. 1956) .........................................21

*Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*,
510 F.3d 474 (4th Cir. 2007) .........................................10

*Wharton v. Columbia Pictures Indus., Inc.*,
907 F. Supp. 144 (D. Md. 1995) ...................................32

## STATE CASES

*Almy v. Grisham*,
639 S.E.2d 182 (Va. 2007) ......................................30, 34

*CaterCorp., Inc. v. Catering Concepts, Inc.*,
431 S.E.2d 277 (Va. 1993) ...........................................30

*Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*,
453 S.E.2d 261 (Va. 1995) ...........................................31

*Gallop v. Sharp*,
19 S.E.2d 84 (Va. 1942) ..........................................30, 31

*Int'l Paper Co. v. Gilliam*,
No. CCB-496, 2003 WL 23573613
(Va. Cir. Ct. Dec. 23, 2003) .........................................35

*J.F. Toner & Son, Inc. v. Staunton Prod. Credit Ass'n*,
375 S.E.2d 530 (Va. 1989) ...........................................43

*O'Bryan Constr. Co. v. Boise Cascade Corp.*,
424 A.2d 244 (Vt. 1980) ..............................................38

*Straley v. Fisher*,
10 S.E.2d 551 (Va. 1940) .........................................44, 45

*United Leasing Corp. v. Thrift Ins. Corp.*,
440 S.E.2d 902 (Va. 1994) .......................................39, 41

# TABLE OF AUTHORITIES
(continued)

Page

*Universal C.I.T. Credit Corp. v. Kaplan*,
    92 S.E.2d 359 (Va. 1956) ..................................................................39

*Weaver Landfill, Inc. v. Eastman Envtl. Transp. Servs.*,
    No. 163821, 1998 WL 972335
    (Va. Cir. Ct. Sept. 15, 1998) ...........................................................42

*Williams v. Chittenden Trust Co.*,
    484 A.2d 911 (Vt. 1984) ..................................................................38

## FEDERAL STATUTES

15 U.S.C. § 1121 ...................................................................................1

15 U.S.C. § 1125(a)(1)(A) ..................................................................19

17 U.S.C. § 102 ..................................................................................29

17 U.S.C. § 103 ..................................................................................29

17 U.S.C. § 106 ............................................................................29, 33

17 U.S.C. § 301 .......................................................................2, 28, 29

17 U.S.C. § 411(a) ..................................................................2, 48, 49

17 U.S.C. § 504(b) .............................................................................45

17 U.S.C. § 507(b) .............................................................................12

28 U.S.C. § 1291 ..................................................................................1

28 U.S.C. § 1331 ..................................................................................1

28 U.S.C. § 1338 ..................................................................................1

28 U.S.C. § 1367(a) .............................................................................1

## STATE STATUTES

VA. CODE ANN. § 8.01-243 .................................................................43

VA. CODE ANN. § 8.3A-309 ................................................................42

VA. CODE ANN. § 59.1-341 .................................................................35

## MISCELLANEOUS

MELVILLE B. NIMMER & DAVID NIMMER,
    NIMMER ON COPYRIGHT (1980) ....................................................38

# TABLE OF AUTHORITIES
(continued)

**Page**

DAVID NIMMER & MELVILLE B. NIMMER,
NIMMER ON COPYRIGHTS (1991).................................................................13

DAVID NIMMER & MELVILLE B. NIMMER,
NIMMER ON COPYRIGHTS (1995).................................................................37

MELVILLE B. NIMMER & DAVID NIMMER,
NIMMER ON COPYRIGHT (2010).................................................................38

Press Release, Gilbert LLP (Jan. 20, 2011) (*available at*,
http://www.gotofirm.com/, last visited Mar. 28, 2011)..................................4

WRIGHT & MILLER, FEDERAL PRACTICE &
PROCEDURE: CIVIL 3d § 1351 (2004) ...........................................................25

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction over Plaintiffs' trademark- and copyright-infringement claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), 1338(b). The district court had supplemental jurisdiction over the pendant state-law claims pursuant to 28 U.S.C. § 1367(a). Although the district court found to the contrary, the district court lacked personal jurisdiction over the foreign Defendants.

Defendants timely noted their appeal on November 12, 2010. JA1274, 1277. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether, where Plaintiffs' claims rest on the manufacture and sale of allegedly infringing tires wholly outside the United States, the district court erred in:

(a) applying the Copyright Act extraterritorially where no allegedly infringing acts took place within the U.S. during the three-year statute of limitations;

(b) applying the Lanham Act to alleged trademark infringement where no tire sales were made in the U.S. and no evidence exists of any confusion of American consumers; and

(c)     asserting personal jurisdiction for each of five distinct claims over the foreign Defendants that do not transact business in Virginia, including some that never set foot in Virginia.

2.    Whether, where the gravamen of Plaintiffs' claims relate to the exploitation of intangible property embedded in a blueprint:

(a)     the Copyright Act's broad preemption provision, 17 U.S.C. § 301, preempts Plaintiffs' state-law claims of conspiracy to violate the Copyright Act, common-law conversion, and conspiracy to convert (with the latter two claims also preempted by a Virginia statute);

(b)     Plaintiffs' conversion and conspiracy to convert claims must be dismissed because they seek recovery of intangible rights, contrary to Virginia law, and would, in any event, be time-barred by Virginia's two-year statute of limitations related to recovery for harm to intangible rights;

(c)     Plaintiffs' conversion claim cannot support a damages award based on disgorgement of Defendants' supposed profits from the overseas sales or use of the intangible property embedded in the blueprint, instead of the fair-market value as required by the Virginia Supreme Court; and

(d)     the Copyright Act verdict must be overturned where five of the nineteen blueprints on which the claim was based were not registered as is required under 17 U.S.C. § 411(a) of the Copyright Act before a suit can be brought.

3.    Whether the jury's $26 million general damages award and general conspiracy verdict must be set aside under this Court's decision in *Barber v. Whirlpool Corporation*, 34 F.3d 1268 (4th Cir. 1994), because each rests on claims that the district court dismissed post-verdict.

## STATEMENT OF THE CASE

This case concerns the alleged exploitation of intangible property rights, through acts undertaken almost entirely abroad.  The gravamen of Plaintiffs' lawsuit is that Defendants, all foreign entities, copied Plaintiffs' tire designs and marks and used them to manufacture and sell tires outside of the United States. The only proper way to bring such allegations of intellectual property rights violations, as numerous courts have recognized, is through infringement claims under the Copyright and Lanham Acts.

But Plaintiffs cannot rely on those federal acts here.  *First*, the Copyright Act does not apply extraterritorially, and the Lanham Act requires a significant effect on U.S. commerce that is absent here.  Undisputed evidence showed that not a single infringing act within the Copyright or Lanham Act's statute of limitations occurred in the United States.  *Second*, as the district court found after the verdict was rendered, nearly all of Plaintiffs' trademark and unfair-competition (unregistered marks) claims were baseless.  *Third*, Plaintiffs failed to register a number of the tire designs at issue with the U.S. Copyright Office.  And *finally*,

because Plaintiffs waited too long to bring those claims, the statute of limitations would have substantially limited their recovery even had the Copyright and Lanham Act claims been cognizable.

To circumvent these obstacles, Plaintiffs supplemented their federal-law claims with state claims for conversion, conspiracy to convert, and conspiracy to infringe copyrights and trademarks. The district court should not have permitted the jury to decide these claims. As a threshold matter, the district court lacked personal jurisdiction over the foreign Defendants, because they have insufficient ties to Virginia. Moreover, the Copyright Act preempts nearly all Plaintiffs' state-law claims, and the conversion and conspiracy to convert claims were not even supported by state law in the first place.

The district court erroneously permitted the jury to consider copyright infringement, registered-trademark infringement, numerous unregistered-trademark-infringement claims, conversion, and civil conspiracy to commit the previously mentioned torts. The jury returned a $26 million general damages verdict in favor of Plaintiffs on all counts, which Plaintiffs' counsel described as "the largest verdict" in Virginia in 2010. *See* Press Release, Gilbert LLP (Jan. 20, 2011) (*available at*, http://www.gotofirm.com/, last visited Mar. 28, 2011) (describing the case as a "copyright-infringement case").

After trial, the district court dismissed the registered-trademark claim in its entirety and nine of the eleven unregistered-trademark claims, but nevertheless rejected Defendants' arguments that this Court's precedent required a new trial on damages because the jury had rendered a general verdict. The court also rejected the remainder of Defendants' post-trial motions. This appeal followed.

## STATEMENT OF THE FACTS

Plaintiffs in this case—an individual and three companies—are all based in Florida. Jordan Fishman, a Florida citizen, owns Tire Engineering & Distribution LLC and Bearcat Tire ARL, LLC, both Florida limited-liability companies, and Bcatco A.R.L., Inc., a corporation with its principal place of business in Florida. JA151, 343-44. Plaintiffs design and distribute underground mining tires, which, during the period at issue, were produced by a Chinese tire manufacturer, Guizhou Tire Corporation ("GTC"). JA276-79, 470. Fishman's mining-tire business is known as "Alpha Mining Systems" or "Alpha Tire Systems." JA343-44, 351.

Thousands of miles away in the Middle East and China, Defendants are foreign companies that manufacture and sell tires. Defendants Al Dobowi, Ltd., and Al Dobowi Tyre Co., LLC (collectively, "Al Dobowi"); and TyreX International, Ltd., and TyreX International Rubber Co., Ltd. (collectively, "TyreX") are based in the United Arab Emirates and China. JA152-54, 588-89. Defendants Linglong Group Co., Ltd., and Shandong Linglong Tire Co., Ltd.

5

(collectively "Linglong") are based solely in China.  JA887-88.  Linglong manufactures and sells tires to distributors.  JA881, 888.  None of the Defendants has offices in the U.S. or transacts business in Virginia.  JA773-74, 887-88, 1191.

In May 2005, John Canning, a consultant, and Surender Kandhari met with Sam Vance, one of Fishman's sales managers, at the Jefferson Hotel in Richmond, Virginia.  JA426-27, 456-57.  No one affiliated with Linglong was present. According to Plaintiffs, Kandhari, Canning, and Vance agreed at the meeting to copy Plaintiffs' blueprints and to produce their own underground mining tires. JA148, 1011-13.

In June 2005, after attempting to work with GTC, Kandhari and Canning met with Linglong in China to discuss manufacturing underground mining tires. JA472, 481-82, 888-89.  Linglong agreed in August 2005 to produce TyreX's new "Infinity" mining-tire line in its factory in China.  JA1375-77.  That same month, TyreX International, Ltd., contracted with Vance to help design and develop the tires.  JA540-41.  From that point, Vance worked predominantly in China, although he maintained his residence in Tazewell, Virginia, and occasionally worked on the tire designs there.  JA541, 556-59.  Vance eventually moved into an apartment in China in July 2006.  JA541.

In December 2005, Linglong's factory in China began producing the Infinity line of mining tires for TyreX, which sold the tires to companies in Poland, China,

6

Australia, and South Africa beginning in early 2006. JA499-500, 774, 888-89, 1401. After seeing these tires in a catalog and believing they were based on his designs, Fishman wrote to Kandhari in June 2006, and traveled to Dubai, to tell Kandhari that he believed Vance had stolen Alpha Mining's blueprints and that Kandhari was infringing Plaintiffs' copyrights and trademarks. JA324-25, 327-30. In February 2007, Fishman's attorney sent Merry Wang, a Linglong employee, a letter alleging that Vance had taken Plaintiffs' proprietary material. JA58-59. When Wang asked for more information, Fishman's attorney wrote that "Alpha's lawyers in China" would contact her. JA64. None ever did. JA895.

In October 2009, over three years after Fishman's lawyer first contacted Defendants, Fishman filed this lawsuit. At the close of Plaintiffs' case, Defendants moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). JA961-62, 1161-62. The district court deferred ruling on that motion until after the verdict. JA961. Over Defendants' objection, the verdict form instructed the jury to award a single, general damages amount for all of the claims for which it found in favor of Plaintiffs. JA992-94, 1152, 1235. The jury found Defendants liable on each count and awarded a general verdict of $26 million, for which Defendants were jointly liable based on the jury's finding of civil conspiracy. JA1149-53.

After trial, Defendants renewed their motion for judgment as a matter of law under Rule 50(b). JA1160. The court granted the motion in part, dismissing the entire registered-trademark count and also nine of the eleven unregistered-trademark (unfair competition) claims for lack of evidence. JA1223-27.

Defendants also moved for a new trial under Rule 59, arguing, among other things, that the general damages verdict and the conspiracy claim could not stand because the district court had dismissed for lack of evidence a number of the substantive claims on which the jury based its award. JA1232-33, 1239-40. The district court denied the motion. JA1249.

This appeal followed.

## <u>SUMMARY OF THE ARGUMENT</u>

Plaintiffs' claims under the Copyright and Lanham Acts must be set aside because the alleged acts underlying their complaint occurred overwhelmingly abroad. Plaintiffs neither alleged nor proved any violation of the Copyright Act occurring within the U.S. that fell within the statute of limitations, and they cannot base recovery on Defendants' acts abroad because courts—including this Court— have uniformly held that the Act has no extraterritorial application. Similarly, Plaintiffs' unfair-competition claim, which is based on the sale of tires made in China and sold abroad—causing no confusion among U.S. customers—falls beyond the scope of the Lanham Act. Defendants' acts had no significant effect on

U.S. commerce, which this Court and other courts require to establish any Lanham Act claim. Indeed, Plaintiffs cannot even establish that Defendants acted in or directed acts toward Virginia sufficiently to provide the district court with personal jurisdiction over the Defendants.

Furthermore, all of Plaintiffs' claims and the damages award rest directly on the alleged exploitation of the intangible rights embodied in copies of blueprints. Because the "core" or "gravamen" of the claims is the copying and creation of derivative works from that intellectual property, the Copyright Act provides a remedy for Plaintiffs to the exclusion of state-law remedies. The Copyright Act therefore preempts Plaintiffs' conversion, conspiracy to convert, and conspiracy to infringe copyright claims and precludes, at a minimum, any recovery of damages under state law for exploitation of those intangible rights. Moreover, the state-law conversion claim (and conspiracy to convert claim) must be dismissed and cannot support the damages award because, under Virginia law, a conversion claim does not extend to the intangible rights at issue here. And, even if Plaintiffs could pursue a copyright claim, that claim could not support the damages award because Plaintiffs failed to secure copyright registration for many of the supposedly infringed blueprints at issue.

Finally, the Supreme Court and this Court have long held that a jury's liability determination or damages award reflected in a general verdict must be set

aside whenever the verdict may have rested on an impermissible or unsupported basis. Here, the district court itself, post-verdict, set aside one of the five claims that may have supported the general verdict damages award and one of the four claims that may have supported the finding of conspiracy liability. Thus, the damages judgment and the conspiracy claim must be set aside for that reason alone. A similar result is independently required if this Court sets aside any of the remaining theories of liability supporting the damages award or conspiracy finding.

## **ARGUMENT**

## I.    **STANDARD OF REVIEW**

The Court reviews *de novo* the district court's assertion of personal jurisdiction, *CFA Institute v. Institute of Chartered Financial Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009), claims that the jury instructions incorrectly stated the law, *Volvo Trademark Holding Aktiebolaget v. Clark Machinery Co.*, 510 F.3d 474, 484 (4th Cir. 2007), and the denial of a Rule 50(b) motion, *Sloas v. CSX Transportation Inc.*, 616 F.3d 380, 392 (4th Cir. 2010). The Court reviews underlying factual findings for clear error. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009). It reviews the denial of a Rule 59 new-trial motion for abuse of discretion. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 242 (4th Cir. 2009). A district court abuses its discretion in upholding an

award that is against the weight of the evidence or without substantial evidence supporting it.  *Id.*

## II. PLAINTIFFS' CLAIMS FOCUS OVERWHELMINGLY ON ACTS ABROAD, REQUIRING DISMISSAL OF PLAINTIFFS' COPYRIGHT AND LANHAM ACT CLAIMS AND DEPRIVING THE DISTRICT COURT OF PERSONAL JURISDICTION OVER THE DEFENDANTS AND CLAIMS.

### A. The Copyright Claim Should Be Dismissed Because The Copyright Act Does Not Have Extraterritorial Effect And The Only Alleged Violation Of The Act In The United States Is Time-Barred.

Plaintiffs based their allegations of Copyright Act violations on certain domestic acts and certain acts undertaken abroad.  The alleged domestic acts of infringement indisputably occurred prior to the period prescribed in the statute of limitations and therefore cannot provide the basis for a claim.  The only acts alleged to have occurred within the limitations period occurred abroad, and they also cannot support a claim because the Copyright Act has no extraterritorial application.

In reaching the opposite conclusion, the district court reasoned that extraterritorial acts can give rise to Copyright Act liability when there is a "predicate" act in the U.S., even if that predicate act occurred beyond the statutory limitations period.  JA1221-23, 1243-44.  This conclusion is directly contrary to this Court's precedent holding that the Copyright Act has no extraterritorial application, finds no support in the cases of any other circuit (including decisions

addressing "predicate acts"), and incorrectly extends the territorial scope of the Copyright Act based on cases holding only that acts abroad can be the basis for assessing damages *arising from actionable violations of the Copyright Act occurring in the U.S.* Contrary to the district court's reasoning, foreign acts cannot themselves give rise to U.S. copyright liability.

### 1. No Domestic Acts Support A Copyright Claim.

No acts within the U.S. give rise to Plaintiffs' Copyright Act claim. As the district court found, the only evidence of copyright infringement in the U.S. involved Vance's alleged acts between May 2005 and July 2006, after which Vance moved to China. JA519-20, 541. Copyright actions must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). This suit was filed on October 28, 2009. The court therefore correctly concluded that "there was little or no evidence that Vance continued to commit these infringing acts inside the United States after October 28, 2006, the critical limitations date for the copyright infringement claim." JA1196. Likewise, Plaintiffs did not argue below that Vance acted within the U.S. in the three years prior to filing this lawsuit.

### 2. Defendants' Acts Abroad Do Not Support A Copyright Claim.

The district court instead concluded that Copyright Act liability could lie where the acts Defendants allegedly undertook abroad within the limitations period

12

followed "predicate acts" of copyright infringement in the U.S. that were outside the limitations period.  JA1107-08, 1110, 1197.

Basing Copyright Act liability directly on acts abroad is contrary to the decisions of this Court and every other court to have considered the issue—the Copyright Act has no extraterritorial application and therefore only U.S. acts can form the basis of a copyright claim.  *See*, *e.g.*, *Nintendo of Am., Inc. v. Aeropower Co.*, 34 F.3d 246, 249 n.5 (4th Cir. 1994).  In addition to the Fourth Circuit, at least six other federal courts of appeals have recognized the "undisputed axiom," *Subafilms, Ltd. v. MGM-Pathe Communications, Co.*, 24 F.3d 1088, 1095, 1099 (9th Cir. 1994) (*en banc*) (quoting DAVID NIMMER & MELVILLE B. NIMMER, NIMMER ON COPYRIGHTS, § 12.04[A][3][b] at 12-86 (1991)), that the Copyright Act has "no extraterritorial application," *Nintendo*, 34 F.3d at 249 n.5 (citing 3 NIMMER ON COPYRIGHTS, § 17.02, at 17-19 (collecting cases)).  *Accord*, *e.g.*, *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988); *Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1366 (Fed. Cir. 2008); *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004); *Liberty Toy Co. v. Fred Silber Co.*, 149 F.3d 1183 (Table), 1998 WL 385469, at *3 (6th Cir. 1998); *Iverson v. Grant*, 133 F.3d 922 (Table), 1998 WL 2887, at *1 (8th Cir. 1998).

The district court erroneously extended and misconstrued "predicate act" cases that, far from permitting a copyright claim to arise from extraterritorial acts,

13

simply indicate that an actionable Copyright Act claim based on an act within the U.S. may lead to recovery of consequential damages regardless of where those damages occur. *See Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 52 (2d Cir. 1939), *aff'd,* 60 S. Ct. 681 (1940); *Update Art*, 843 F.2d at 73; *L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 992 (9th Cir. 1998) ("*Reuters III*"). This line of cases originated in the Second Circuit and was "premised on the theory that the copyright holder may recover damages that stem from a direct infringement of its exclusive rights that occurs *within* the United States." *Subafilms*, 24 F.3d at 1094 (emphasis in original). In that seminal case, Judge Learned Hand held that a plaintiff who prevailed in an actionable copyright infringement suit "acquired an equitable interest" or "constructive trust" with regard to the overseas exploitation of that domestic violation. *Sheldon*, 106 F.2d at 52; *see also*, *e.g.*, *Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096, 1100-01 (2d Cir. 1976) (applying and explaining *Sheldon*'s trust theory).[1]

But, as the Ninth Circuit expressly confirmed when it adopted this "predicate act" line of cases, the doctrine does not alter the territorial limitation on

---

[1] This Court has not endorsed or adopted this line of cases recognizing a limited allowance for extraterritorial damages caused by an actionable "predicate act" of U.S. infringement, and the strong presumption in *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869, 2877-78 (2010), against giving any extraterritorial effect to U.S. statutes in the absence of clear congressional intent provides a strong reason for not doing so. The Court need not resolve this issue if it confirms that this line of cases provides no support for the district court's determination.

Copyright Act liability or permit a claim to arise from an extraterritorial act related to a "predicate act" in the U.S. that was, as here, beyond the statutory limitations period. *See*, *e.g.*, *Reuters III*, 149 F.3d at 992 ("a party becomes liable for extraterritorial damages only when an act of infringement occurs within the United States, subjecting it to liability as an infringer"); *L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 340 F.3d 926, 932 (9th Cir. 2003) ("*Reuters IV*") ("predicate act" doctrine did not alter the fact that the Copyright Act has no extraterritorial reach); *Subafilms*, 24 F.3d at 1094 (no claim based on extraterritorial act "authorized" in U.S. in absence of actionable act within U.S.).

Consistent with the rationale underlying this line of cases, every court that has authorized collection for damages for acts abroad has rested recovery on a claim arising from an actionable, domestic act of infringement within the statutory period. *See Reuters III*, 149 F.3d at 990; *L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 942 F. Supp. 1265, 1268-69 (C.D. Cal. 1996), *aff'd in part, rev'd in part*, 149 F.3d 987 (1998); *Update Art*, 843 F.2d at 73; *Sheldon v. Metro-Goldwyn Pictures Corp.*, 7 F. Supp. 837, 838-39 (S.D.N.Y. 1934) (reciting facts establishing that *Sheldon* action was brought within limitations period for domestic act of infringement), *rev'd on other grounds*, 81 F.2d 49 (2d Cir. 1936); *Burns v. Imagine Films Entm't, Inc.*, No. 92-CV-2438, 2001 WL 34059379, at *3 (W.D.N.Y. Aug. 23, 2001); *Compaq Computer Corp. v. Ergonome, Inc.*, No. Civ.A. H-97-1026,

2001 WL 34104826, at *5 (S.D. Tex. June 27, 2001). In none of these cases, did an act abroad provide the basis for a plaintiff's claim. The district court's result is literally without precedent, as well as against the uniform precedents establishing that the Copyright Act has no extraterritorial application.

Nor is there merit to the district court's rationale that "the Copyright Act's statute of limitations is a limit on the remedy only, and not on the substantive right." JA1198. This is contrary to the reasoning outlined above that allows overseas damages only *on an actionable U.S. violation of the Act*, *see supra* p. 15, and is supported by neither of the decisions invoked by the district court. Those cases addressed only, in relevant part, the applicability of *equitable* doctrines, such as *laches* and tolling, to the Copyright Act's statute of limitations. *See Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l*, 533 F.3d 1287, 1320 (11th Cir. 2008) (laches); *Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 340 (5th Cir. 1971) (tolling). Neither the district court nor Plaintiffs have ever suggested that any equitable doctrine affects the statute of limitations in this case.

Furthermore, the district court's rationale is contrary to the well-established rule that "[t]he applicable statute of limitations bars civil copyright actions brought more than three years after the claim accrues." *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 202 (4th Cir. 1997). As the Court explained,

> [A] party cannot reach back, based on acts of
> infringement that accrued within the limitations period,

16

and recover for claims that accrued outside the limitations period.

*Id.* "Each act of infringement is a distinct harm giving rise to an independent claim for relief." *Id.* at 204. Where, as here, the only actionable infringement occurred outside the limitations period, Plaintiffs cannot bring a claim under the Copyright Act. *See*, *e.g.*, *id.*; *Reuters III*, 149 F.3d at 992.

**B.    The Lanham Act Does Not Extend To The Extraterritorial Trade At Issue.**

The district court also erred in holding that the extraterritorial conduct at issue here fell within the scope of the Lanham Act. While the Lanham Act has broader extraterritorial application than the Copyright Act, its scope is limited to harms prohibited by the Act that cause a significant effect on the commerce that Congress can regulate. Here, every sale supporting the alleged trademark-infringement claim occurred entirely outside the U.S., beyond the scope of trade that Congress can regulate, and without any—much less a significant—effect on U.S. commerce evaluated in light of the Act's objectives. The statute's language and intent and longstanding precedent therefore require dismissal of Plaintiffs' Lanham Act claim.

The elements of a Lanham Act violation include a demonstration that "the defendant's use of the mark occurred 'in commerce,'" as well as use of the mark in connection with sale of goods or service in a manner likely to confuse customers.

17

*People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001). These elements tie the Act's scope to the commercial transactions that Congress can regulate. *See*, *e.g.*, *Nintendo*, 34 F.3d at 249 n.5.[2] As this Court has explained, the Lanham Act's "use 'in commerce'" requirement reaches only those acts that are in interstate commerce, foreign trade with the U.S., or Indian commerce. *Int'l Bancorp, LLC v. Société des Bains de Mer et du Cercle des Etrangers à Monaco*, 329 F.3d 359, 363-64 (4th Cir. 2003). Moreover, the Lanham Act reaches only conduct "which has a *significant* effect on United States Commerce." *Nintendo*, 34 F.3d at 249 n.5 (emphasis added).

In addition, the relevant harm to commerce must be "viewed in light of the purposes of the Lanham Act" and "applied in light of the core purposes of the Lanham Act." *McBee v. Delica Co.*, 417 F.3d 107, 111, 121 (1st Cir. 2005); *Nintendo*, 34 F.3d at 250; *see also Morrison*, 130 S.Ct. at 2884 (in assessing

---

[2] Like "use 'in commerce,'" the Act's elements addressing customer confusion and use in connection with distribution of goods and services also require a nexus to U.S.-related commerce employing the infringing mark: that is, a showing of customer confusion among U.S. customers and use of the mark in goods or services sold to, from, or in the U.S. *See*, *e.g.*, *Nintendo*, 34 F.3d at 250 (need showing of acts "hav[ing] adverse effects on commerce within the United States by harming the claimant-registrant's trade reputation in the United States"); *McBee v. Delica Co.*, 417 F.3d 107, 125 (1st Cir. 2005) ("no inference of dilution or other harm can be made in situations where American citizens are not exposed at all to the infringing product"); *Atlantic Richfield Co. v. Arco Globus Int'l Co.*, 150 F.3d 189, 192 (2d Cir. 1998) (claim fails where "there is no evidence that domestic consumers have been misled or have come to view the [] mark less favorably as a result of those foreign activities").

extraterritorial effect, courts must address alleged harm that was a "'focus' of congressional concern" in enacting the particular statute).  In relevant part, the Lanham Act prohibits the use of infringing marks that are "likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1125(a)(1)(A).  Thus, the "focus" of congressional concern in enacting the Lanham Act was to protect trademark holders' "trade reputation in United States markets," *Nintendo*, 34 F.3d at 250, and "to protect the ability of American consumers to avoid confusion," *McBee*, 417 F.3d at 121.  Decisions of this Court deciding the extraterritorial effect of the Lanham Act have required this nexus to U.S. consumers' potential confusion caused by use of the infringing mark in U.S.-related trade.  *See Nintendo*, 34 U.S. at 249-50; *Int'l Bancorp*, 329 F.3d at 365.

Applying these principles, Plaintiffs' unfair-competition claim must be dismissed.  The alleged unfair competition concerned only the sale of tires outside of the U.S. and did not concern the diversion of sales into the U.S.  JA1185-87, 1201.  This is insufficient to establish "use in commerce" within Congress's power to regulate, a "significant effect" on U.S.-related commerce, or any diminishment of the brand among U.S. consumers.  *See*, *e.g.*, *Nintendo*, 34 F.3d at 249-50, n.5.  Plaintiffs' allegations, the jury instructions, and the district court's rationale for upholding the unfair-competition claim simply provide no connection to use of the mark in U.S. commerce or to any confusion on the part of U.S. consumers—

necessary predicates to any Lanham Act claim. The district court in fact confirmed that there was no evidence of "actual confusion over the source of the tires *resulting from the similarity of the marks*." JA1200 (emphasis in original).

The district court nonetheless reasoned that "defendants' infringing activity succeeded in destroying a business based in the United States through acts that occurred partly within the United States," and "that defendants clearly intended to sell their infringing tires in the United States" one day. JA1201. Prospective, potential use of the mark in trade with the U.S.—which the district court itself acknowledged never occurred, *id.*—is not, of course, actual "use in commerce," nor can it amount to a "significant effect" on that commerce. Vance's actions in the U.S. and alleged financial harm to Plaintiffs did not amount to or arise from use of Plaintiffs' mark in U.S. commerce, much less have any "significant effect" on U.S.-related trade involving the mark or on U.S. consumer purchases. Vance's actions were, in any event, beyond the two-year limitations period. The alleged harm to Plaintiffs' business is not cognizable under the Lanham Act because no harm was done to "the claimant-registrant's trade reputation in United States markets," *Nintendo*, 34 F.3d at 250, nor was confusion caused among U.S. consumers, *see*, *e.g.*, *McBee*, 417 F.3d at 125 ("[N]o inference of dilution or other harm can be made in situations where American citizens are not exposed at all to the infringing product."); *accord Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824,

20

830 (2d Cir. 1994) (no Lanham Act recovery of lost foreign export sales due to sales with no nexus to U.S.).[3]

Moreover, even if Defendants' prospective or other actions were in some minimal respect tied to U.S. commerce (and they are not), the principles above indicate that the unfair-competition claim could not support the damages award. Damages were calculated entirely based on tire sales between Chinese manufacturers and foreign purchasers outside the U.S. They reflect transactions beyond the scope of the Lanham Act and even beyond the scope of Congress' power to regulate, and thus cannot support recovery of damages. *See*, *e.g.*, *McBee*, 417 F.3d at 125-26 (no Lanham Act damages can be based on transactions without nexus to U.S. trade or consumer confusion).[4]

---

[3] Even if there were doubt regarding the inapplicability of the Lanham Act based on the limitations in the "use 'in commerce'" and related elements, the Defendants' lack of U.S. citizenship would separately preclude Plaintiffs' claim. Defendants' citizenship is a crucial factor in determining whether the Lanham Act may reach overseas acts, even where Congress may regulate. *See*, *e.g.*, *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 955 F. Supp. 220, 227 (S.D.N.Y.) *aff'd*, 152 F.3d 948 (1997) ("[T]he citizenship of the defendant is the most significant factor in determining whether to apply the Lanham Act extraterritorially to a defendant's foreign activities."); *see also*, *Totalplan*, 14 F.3d at 830; *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 642-43 (2d Cir. 1956).

[4] Dismissal of Plaintiffs' claim based on the Lanham Act will also result in dismissal of the district court's award of attorney's fees, which was based solely on the Lanham Act. *See* JA1256, 1271.

21

**C.    The District Court Lacked Personal Jurisdiction Over The Foreign Defendants.**

Plaintiffs' allegations so overwhelmingly focus on acts abroad that they fail to establish a nexus between Defendants and their acts in Virginia supposedly giving rise to Plaintiffs' claims—and that nexus is required to establish the district court's personal jurisdiction over the Defendants with respect to those claims.

To establish that a district court has personal jurisdiction over Defendants consistent with the requirements of the Due Process Clause, Plaintiffs must establish that:  (1) the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) the claims arose out of those activities directed at the State; and (3) the exercise of personal jurisdiction is constitutionally reasonable.  *See*, *e.g.*, *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).  Because Plaintiffs failed to satisfy any of these requirements, this action must be dismissed.[5]

As to the first of these requirements, Linglong did not "purposefully avail" itself of the privilege of conducting activities in Virginia or undertake activities giving rise to Plaintiffs' claims.  It does not own property or transact business in Virginia, nor has any of its agents set foot in the Commonwealth.  *See Consulting*

---

[5] As in *Consulting Engineers*, 561 F.3d at 277 n.4, because the exercise of personal jurisdiction over Defendants does not comport with Due Process, this Court "need not reach the issue of whether Virginia's arguably more stringent long-arm statute would have also denied the court personal jurisdiction."  (Emphasis omitted).

*Eng'rs*, 561 F.3d at 278 (citing numerous precedents and a non-exhaustive list of factors courts routinely consider, all of which are lacking here); *see also* JA1191. In fact, Kandhari and Canning approached Linglong in China and Linglong manufactured the tires in China, which were sold by TyreX in Poland, China, Australia, and South Africa. JA499-500, 774, 887-88. And, as to the remaining Defendants, Vance's actions can be attributed at most only to the one corporate entity that contracted with him, TyreX International, Ltd.

Despite overwhelming evidence that all of Linglong's activities occurred in China, the district court nonetheless exercised specific jurisdiction over Linglong on the theory that it participated in a conspiracy with Vance "knowing that [he] would perform acts in furtherance of the conspiracy in Virginia and … that Linglong … collaborated directly with Vance to commit these acts in Virginia." JA1191; *see also* JA1215. The sole basis for this conclusion was a single e-mail, dated September 1, 2006, sent by Vance to Linglong in China, copying members of the Kandhari family and Canning:

> Just a note to let you know I am back at my office in Tazewell, Na., [sic] USA. We have been working on the 2 drawings…. Did I miss understand [sic] or is your Engineering Dept. working on the reccomendations [sic] for the changes to the drawings I left with you. I understood they would make a recommendation as to how to change these drawings so our Infinity Mining tires would not look like the AA (Awful Alpha) Ha! Was I wrong?

JA1384. There is no evidence that Wang responded.[6]

Initially, a conspiracy does not supplant the traditional constitutional framework laid out by the Supreme Court for analyzing minimum contacts with the forum state. *See*, *e.g.*, *Kipperman v. McCone*, 422 F. Supp. 860, 873 n.14 (N.D. Cal. 1976); *Hawkins v. Upjohn Co.*, 890 F. Supp. 601, 608-09 (E.D. Tex. 1994).[7] The Court need not reach this issue, however, because even assuming that this Court would recognize "conspiracy jurisdiction" as a means of satisfying the first prong of the constitutional analysis, Plaintiffs have failed to demonstrate that: (1) there was a conspiracy involving Linglong to copy Plaintiffs' tire designs and (2) Linglong "knew or should have known" that Vance was copying the designs *in Virginia*. *Noble Sec. Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 539 (E.D. Va. 2009) (recognizing conspiracy jurisdiction). This e-mail demonstrates neither, yet it was the only evidence in the record for both.

---

[6] Although the district court also mentioned phone calls between Vance and Linglong while Vance was in Virginia, the court did not identify such calls, JA1191. The record contains no evidence of such calls or any contacts initiated by Linglong into the Commonwealth.

[7] This Court does not appear to have directly addressed whether minimum contacts by one conspirator could provide a basis for personal jurisdiction over others. *See*, *e.g.*, *Lolavar v. de Santibanes*, 430 F.3d 221, 229 (4th Cir. 2005) (noting that the issue has been addressed in other Circuits and a law review article); *McLaughlin v. McPhail*, 707 F.2d 800, 807 (4th Cir. 1983) (appearing to accept the possibility that a conspiracy could, under certain circumstances, support personal jurisdiction, but holding that plaintiffs failed in any event to establish personal jurisdiction even under such a theory).

There is nothing indicating that Linglong knew that Vance was copying Plaintiffs' designs. Moreover, Wang believed that Vance had designed the tires himself, and she had no idea that Alpha referred to Fishman's tires. JA908-10. There is no contrary evidence.

Also, nothing in the e-mail suggests that Linglong "knew or should have known" that Vance was *in Virginia*. *Noble*, 611 F. Supp. 2d at 539-40 (citations omitted). The only possible reference to Virginia is Vance's statement that he is back at his office in "Tazewell, *Na.*, USA." JA1384 (emphasis added). There is no evidence showing that *Wang*, a Chinese national, knew what Vance had intended to type, particularly given that seven other states have two-letter abbreviations ending in "A" and eight states have abbreviations beginning with "N."

For these reasons, Plaintiffs also failed to satisfy the second due process requirement for each Defendant—that each of the claims submitted to the jury arose from those activities directed at Virginia. *See*, *e.g.*, 5B WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1351, at 299 n.30 (2004) ("There is no such thing as supplemental specific personal jurisdiction; if separate claims are pleaded, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim."). As described above, the Linglong Defendants directed no

actions to Virginia, much less actions giving rise to each of the substantive claims. Vance's actions can be attributed only to one of the remaining Defendants. *See supra* pp. 22-23. And, Vance's actions in the U.S. occurred beyond the statute of limitations period for the Copyright and Lanham Act claims, and thus those claims do not "arise out of those activities" in Virginia. *Consulting Eng'rs*, 561 F.3d at 278. (This point is even stronger if this Court finds the conversion claim preempted by the Copyright Act, *see infra* pp. 33-38).[8]

Finally, the exercise of personal jurisdiction here is also not constitutionally reasonable. *See Consulting Eng'rs*, 561 F.3d at 278-79. Defendants are companies based in the United Arab Emirates and China that have been forced to defend themselves in a foreign legal system. Neither company has a physical presence in Virginia, and the tires were manufactured in China and never sold in Virginia. The U.S. Supreme Court and this Court have stressed that the "unique burdens" on a defendant defending itself in a foreign legal system "should have significant weight in assessing the reasonableness of stretching the long arm of

---

[8] These points apply equally to the earlier meeting in Richmond attended by Surender Kandhari. That meeting occurred beyond the statute of limitations for those two claims and reflected no acts amounting to conversion. In any event, Surender Kandhari's actions did not constitute purposeful availment and cannot be attributed for that purpose or for conspiracy jurisdiction to particular Defendant entities through his role in the "Al Dobowi Group," which, as even the district court concluded, was not a legal entity. JA253. Kandhari indicated that he attended the meeting on behalf of TyreX International, Ltd. and was the managing director of Al Dobowi Tyre Co., LLC. *See* JA132-35.

personal jurisdiction over national borders." *Id.* at 282 n.12 (quoting *Asahi Metal Indus. Co. v. Super. Court*, 480 U.S. 102, 114 (1987)). Also, Virginia has very little interest in the litigation because Plaintiffs are Florida residents. *See Fed. Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 661 (4th Cir. 1989) (explaining that the plaintiffs' status as nonresidents of the forum state weighs against asserting jurisdiction). These considerations also require dismissal for lack of personal jurisdiction.

## III.    PLAINTIFFS' CLAIMS ADDRESS ALLEGED EXPLOITATION OF INTANGIBLE RIGHTS, REQUIRING DISMISSAL OF SEVERAL CLAIMS AS PREEMPTED BY THE COPYRIGHT ACT, DISMISSAL OF THE CONVERSION CLAIM, VACATION OF THE DAMAGES AWARD, AND REVERSAL OF THE COPYRIGHT VERDICT FOR FAILURE TO REGISTER MANY OF THE BLUEPRINTS.

All of Plaintiffs' claims and the damages award rest directly on the alleged exploitation of the intangible rights embodied in a copy of a blueprint. Because the "core" or "gravamen" of the claims is the copying and creation of derivative works from that intellectual property, the Copyright Act provides the exclusive means of redress, preempts Plaintiffs' conversion and conspiracy to convert and conspiracy to infringe copyright claims, and precludes, at a minimum, any recovery of damages for exploitation of those intangible rights outside of the Copyright and Lanham Acts.

27

### A.     The Copyright Act Preempts Plaintiffs' Conspiracy And Conversion Claims.

The Copyright Act provides for broad preemption of state-law claims that assert rights protected by the Act itself or that otherwise alter the scope of relief afforded by the Act.  Here, Plaintiffs' claim for conspiracy to infringe copyright is clearly preempted, both because it directly asserts relief for the violation of the federal right and because it provides for secondary liability in circumstances not provided for under the federal regime.  Similarly, Plaintiffs' conversion and conspiracy to convert claims are preempted because they too seek relief for the reproduction and making of derivative works (tires, derived from the copied blueprints) and focus on the exploitation of "intangible" or intellectual property that is protected directly by the Copyright Act.

Section 301 of the Act provides:

> [A]*ll legal or equitable rights* that are equivalent to any of the exclusive rights within the general scope of copyright as specified in section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 … *are governed **exclusively** by this title.*  [After January 1, 1978], *no person is entitled to any such right* or equivalent right in any such work *under the common law or statutes of any State*.

17 U.S.C. § 301(a) (emphases added).  "Thus, § 301(a) preempts state-law claims if the work is within the scope of the subject matter of copyright as specified in 17

28

U.S.C. §§ 102, 103 and the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229-30 (4th Cir. 1993) (internal citations and quotation marks omitted).

The preemptive scope of § 301 is "broad and absolute," *Berge v. Board of Trustees for the University of Alabama*, 104 F.3d 1453, 1464 (4th Cir. 1997), and applies even where a state-law cause of action contains an "extra element" unless the state-law claim is "*qualitatively* different from a copyright infringement claim." *Id.* at 1463-64 (citing *Rosciszewski*, 1 F.3d at 229-30); *see also*, *e.g.*, *Daboud v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995); *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985). In determining whether the state-law claim asserted is qualitatively the same as a federal right, the Court examines "the core of both causes of action." *Rosciszewski*, 1 F.3d at 230; *see Berge*, 104 F.3d at 1464 (examining "the core of the state law theory of recovery"); *id.* ("gravamen" of claim).

### 1.   Plaintiffs' Conspiracy To Infringe Copyright Claim Is Preempted.

These principles demonstrate that Plaintiffs' state-law cause of action for conspiracy to violate copyright is preempted. The "core of both causes of action" is a violation of a copyright. Indeed, the very *object* of the conspiracy alleged is to violate federal copyright law, JA169, and as the district court acknowledged,

Plaintiffs could not maintain their conspiracy to violate copyright claim in the absence of a copyright violation, JA1098-99. *Accord Almy v. Grisham*, 639 S.E.2d 182, 188 (Va. 2007) (dismissal of underlying cause of action also requires dismissal of corresponding common-law conspiracy claim). The Virginia Supreme Court has confirmed that "[t]he gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means." *Gallop v. Sharp*, 19 S.E.2d 84, 86 (Va. 1942); *see also*, *e.g.*, *Almy*, 639 S.E.2d at 189; *CaterCorp., Inc. v. Catering Concepts, Inc.*, 431 S.E.2d 277, 281-82 (Va. 1993). Preemption is required because "the Copyright Act preempts any legal or equitable right under state law which is 'equivalent' to any of the exclusive rights under the general scope of copyright, so that state law could not in fact make copyright infringement a violation of the state Act." *Nintendo*, 34 F.3d at 251.

This result is especially clear here because the Copyright Act provides a defined scope of secondary liability, limited by the doctrines of contributory and vicarious liability, and the state-law conspiracy claim would alter the scope of secondary liability in a manner incompatible with the federal statute. *See*, *e.g.*, *id.* ("the Copyright Act's remedial scheme … provides the exclusive remedies for copyright infringement" and preempts state measures that would supplement those

remedies).[9]  In fact, the district court's copyright instruction rested on a theory of contributory and vicarious liability, *see* JA1106-07, and the conspiracy claim provided an additional basis for the jury to find secondary liability related to the copyright violation, *see* JA1098-99.

The district court erroneously reasoned that the conspiracy claim is not preempted because it required an extra element of agreement and "the gravamen of a conspiracy claim is agreement, not reproduction."  JA1195.  This view is unsustainable in light of the Virginia Supreme Court's characterization of the conspiracy cause of action.  *See*, *e.g.*, *Gallop*, 19 S.E.2d at 86; *see supra* p. 30.

Moreover, this Court has already rejected the district court's rationale in holding that "an action will not be saved from [copyright] preemption by elements such as awareness or intent, which alter the action's scope but not its nature." *Rosciszewski*, 1 F.3d at 230 (internal citation and quotation marks omitted); *see also*, *e.g.*, *Aqua Bay Concepts, Inc. v. Grosse Point Bd. of Realtors*, 24

---

[9] Indeed, the elements of a claim for common-law conspiracy to commit copyright infringement closely match the elements of a claim for contributory copyright infringement, further confirming that preemption is required here.  *Compare*, *e.g.*, *Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*, 453 S.E.2d 261, 267 (Va. 1995) ("common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, [an unlawful purpose]"); *with CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) (contributory infringement found where "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another" (internal citation and quotations marks omitted)).

U.S.P.Q.2d 1372, 1375 (E.D. Mich. 1992) ("[T]he terms 'deception' and 'conspiracy' focus on issues of awareness and intent even though the underlying action (i.e., Defendants' alleged unlawful use of a copyrighted map), remains essentially the same under the state claim."). For these reasons, federal courts have consistently held that state-law conspiracy claims are preempted when they related to a violation of federal law, including the Copyright Act.[10]

The district court's other basis for finding against preemption has no basis in fact and its error demonstrates that the Act's preemptive scope requires dismissal of the conspiracy claim in its entirety. The district court stated that the copyright conspiracy claim was not preempted because it was part of a larger conspiracy claim which included objects related to trademark infringement and conversion. JA1195. That is clearly wrong: the district court expressly instructed the jury that it could find Defendants guilty of common-law conspiracy and award damages based on a finding of copyright infringement alone. JA1098 ("You may find defendants liable for conspiracy to commit one, two, or all three of the underlying torts."); JA1099 (damages based on "copyright infringement, trademark

---

[10] *See*, *e.g.*, *Wharton v. Columbia Pictures Indus., Inc.*, 907 F. Supp. 144, 145-46 (D. Md. 1995); *Hoey v. Dexel Sys. Corp.*, 716 F. Supp. 222, 224 (E.D. Va. 1989) (conspiracy to infringe copyrights claim preempted); *Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 960 (N.D. Ill. 2002) (noting that "the tort is the 'gist' of a civil conspiracy claim" and finding conspiracy claim preempted); *Tegg Corp. v. Beckstrom Elec. Co.*, 650 F. Supp. 2d 413, 426-27 (W.D. Pa. 2008) (conspiracy claim preempted).

infringement or conversion").[11]   Because the jury's entire conspiracy finding may well have rested on the claim of conspiracy to infringe copyright, the entire conspiracy claim must be dismissed.  *See infra* pp. 56-57.

### 2.    Plaintiffs' Conversion Claim Relating To Intangible Rights Is Preempted.

The copyright preemption principles and cases outlined above also establish that Plaintiffs' conversion claim, which focuses on the exploitation of intangible rights, is preempted.  The "core" or "gravamen" of Plaintiffs' conversion claim is the right to reproduce and make derivative works from the blueprints embodying Plaintiffs' ideas in a tangible form, exactly the rights protected exclusively through the Copyright Act.  *See* 17 U.S.C. § 106 (rights of reproduction and preparation of derivative works).  Plaintiffs' conversion claim alleged that Defendants "took and reproduced Plaintiffs' confidential business information, product designs and trade secrets," resulting in "damage to their business and business interests."   JA177 (conversion claim); *cf.* JA173 (equivalent copyright allegation).[12]   The district court's jury instructions, which provided that Plaintiffs' conversion claim extended to "intangible property rights … expressed in a physical document," JA1100,

---

[11] *See also* JA250-51 (determining "the applicable limitation period" for each of the three civil conspiracy claims by "reference to the applicable period for the underlying substantive claim").

[12] At trial, Plaintiffs focused on the intellectual property contained in the blueprints.  JA313 ("From these prints anybody can turn around and make a mold and potentially make a tire.").

demonstrate that Plaintiffs sought protection exclusively available through the Copyright Act. *Christopher Phelps & Associates, LLC v. Galloway*, 492 F.3d 532, 544 (4th Cir. 2007) ("copyright violations … deprive the copyright holder of intangible exclusive rights"). Because "the Copyright Act preempts any legal or equitable right under state law which is 'equivalent' to any of the exclusive rights under the general scope of copyright," *Nintendo*, 34 F.3d at 251, the conversion claim's protection of the exploitation of "intangible rights" is preempted. *See also*, *e.g.*, *Daboud*, 42 F.3d at 289.[13]

Two of this Court's cases establish that conversion claims that focus on a right equivalent to copyright are preempted because the state and federal claims are not qualitatively different, despite the extra state-law elements associated with conversion. In *Berge*, this Court held that a conversion claim focused on the copying and use of intangible ideas was preempted because "where the core of the state law theory of recovery, as in conversion, goes to wrongful copying …, it is preempted." 104 F.3d at 1464. In *Rosciszewski*, this Court found that, in relation to the appropriation of a computer program, the Copyright Act preempted a claim under the Virginia Computer Crimes Act even though that Act contained an

---

[13] Plaintiffs' conspiracy to convert claim must also be dismissed as: (i) preempted, for the same reasons the conversion claim is preempted and because the additional "agreement" element cannot save a conspiracy claim from preemption, *see supra* p. 31; and (ii) unsustainable once the common-law conversion claim is dismissed, *see*, *e.g.*, *Almy*, 639 S.E.2d at 188 (dismissal of underlying cause of action also requires dismissal of corresponding common-law conspiracy claim).

element related to "obtain[ing] … or convert[ing] the property of another."  1 F.3d at 230.  As is the case here, the conversion element of the state-law cause of action in *Rosciszewski* "d[id] not add an element qualitatively changing the state claim from one of unauthorized copying," and the state claim was therefore preempted. *Id*.  Courts must look to the "core of the state law theory of recovery" sought by plaintiffs, and determine whether plaintiffs are using a conversion claim to mask what is in essence an assertion of a copyright claim, because otherwise "if the language of the act could be so easily circumvented, the preemption provision would be useless, and the policies behind a uniform Copyright statute would be silenced." *Berge*, 104 F.3d at 1464 (internal citation and quotation marks omitted).

In addition, the Virginia Uniform Trade Secrets Act ("VUTSA") separately preempts Plaintiffs' conversion claim because it preempts "*all* claims for relief [under Virginia law], including both common law *and* statutory causes of action, if they provide for a civil remedy for misappropriation of trade secrets …." *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1363-64 (Fed. Cir. 2005) (emphasis in original).[14]

---

[14] *See* VA. CODE ANN. § 59.1-341; *Int'l Paper Co. v. Gilliam*, No. CCB-496, 2003 WL 23573613, at *4 (Va. Cir. Ct. Dec. 23, 2003) (VUTSA "preempts alternative theories in tort, such as conversion, when it can be 'clearly discerned' that the information in question constitutes a trade secret."); *see also Combined Ins. Co. of Am. v. Wiest*, 578 F. Supp. 2d 822, 834 (W.D. Va. 2008).  Here, plaintiffs make clear that their conversion claim rests on the "intangible property" taken and exploited by defendants that also constitutes a trade secret.  *See* JA177 (alleging

The district court relied on dicta in *Berge* it believed indicated that conversion claims are not preempted when a plaintiff proves the conversion of a "tangible object[] embodying her intellectual property." *Berge*, 104 F.3d at 1463; JA1217. These statements do not and cannot, however, displace the central inquiry regarding whether the particular claim is "'*qualitatively* different from a copyright infringement claim,'" *Berge*, 104 F.3d at 1463 (quoting *Rosciszewski*, 1 F.3d at 229-30), and Plaintiffs' claim here focuses on damages arising from exploitation of the intangible property rather than damages to or from excluded use of tangible property. In *Berge* itself, the Court emphasized that the determination to be made is whether "the core of the state law theory of recovery … goes to wrongful copying," *id.* at 1464, and that is clearly the case here.

In the cases the *Berge* court relied upon, defendants also secured physical items embodying plaintiff's intellectual property, but the conversion claims were still preempted because, as here, "there was no extra element to the essential claim that the ideas were misappropriated" and "the action actually sought to recover the unauthorized copying of the work, concepts, and ideas of a research paper." 104 F.3d at 1463 (citing *Dielsi v. Falk*, 916 F. Supp. 985, 992 (C.D. Cal. 1996), and *Patrick v. Francis*, 887 F. Supp. 481, 482, 483 (W.D.N.Y. 1995)); *see also*, *e.g.*,

---

that defendants "took and reproduced Plaintiffs' confidential business information, product designs and trade secrets," resulting in "damage to their business and business interests").

*Kindergartners Count, Inc. v. DeMoulin*, 171 F. Supp. 2d 1183, 1193-94 (D. Kan. 2001) (citing *Berge* for proposition that "if a conversion claim involves tangible property and seeks its recovery then the claim avoids preemption, but if the plaintiff is only seeking damages from the defendant's reproduction of a work—and not the actual return of a physical piece of property—the claim is preempted").[15] And, as noted above, this Court in *Rosciszewski* held that a state-law cause of action was preempted even though it contained an element requiring obtaining or converting the property of another, and that where a plaintiff's core claim seeks relief for copyright infringement, such an element "does not add an element qualitatively changing the state claim from one of unauthorized copying." 1 F.3d at 230.

In any event, even if this Court accepted the district court's view of *Berge* and disregarded its own established analysis, Plaintiffs could recover only for damages to the blueprint and the loss of its exclusive use, not damages related to the exploitation of the "intangible rights" that are the intellectual property protected by the Copyright Act, because a state-law claim is "preempted to the extent that it is based on [a right protected by the Copyright Act]." *Rosciszewski*, 1

---

[15] The *Berge* court also relied on a treatise that clearly indicates the limit of the principle set forth by this Court. *Berge*, 104 F.3d at 1463 (relying on DAVID NIMMER & MELVILLE B. NIMMER, NIMMER ON COPYRIGHTS § 1.01[B](1)(i) (1995) ("The torts of conversion and trespass relate to interference with tangible rather than intangible property….")).

F.3d at 230; *see also*, *e.g.*, *Alliance for Telecomm. Indus. Solutions, Inc. v. Hall*, Civil No. CCB-05-440, 2007 WL 3224589, at *11-12 (D. Md. Sept. 27, 2007) (finding conversion claim preempted insofar as it related to intangible property and stating that "the plaintiff's ability to recover damages for conversion of the tangible items containing [intangible property] … will be limited to the value of these items themselves").  This approach confines recovery for conversion to its usual scope:  limited to the costs associated with the copy of the blueprints—damages which Plaintiffs did not seek—and *not the value of the intellectual property*.  *See*, *e.g.*, *O'Bryan Constr. Co. v. Boise Cascade Corp.*, 424 A.2d 244, 248 (Vt. 1980) (citing and quoting 2 NIMMER ON COPYRIGHT § 8.23, at 8-272.7 n.1 (1980)); *see also* 1-1 NIMMER ON COPYRIGHT § 1.01[I] (2010); *Williams v. Chittenden Trust Co.*, 484 A.2d 911, 915 (Vt. 1984) (damages for converting a physical set of architectural plans was the cost incurred by the architect to produce those plans).  That is because a conversion claim addresses the wrongful possession of the physical embodiment of the work, while a copyright claim addresses the wrongful use of the intangible intellectual property contained within that physical document.  *See*, *e.g.*, *O'Bryan*, 424 A.2d at 248.

**B.    Virginia Law Does Not Recognize The Conversion Of Intangible Property Rights Simply Because Those Rights Are Expressed In A Copied Document.**

Even if Plaintiffs' conversion claim were not preempted—which it is—the conversion claim would still fail because, under Virginia law, conversion does not apply to intangible-property rights expressed in copies of a tire blueprint.  In Virginia, conversion is defined as "any wrongful exercise or assumption of authority … over another's goods, depriving him of their possession … [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it."  *Universal C.I.T. Credit Corp. v. Kaplan*, 92 S.E.2d 359, 365 (Va. 1956).  As a general rule, "conversion applies only to tangible property." *United Leasing Corp. v. Thrift Ins. Corp.*, 440 S.E.2d 902, 906 (Va. 1994).  The Virginia Supreme Court has recognized only a narrow exception to these rules for so-called "merged documents," in which the intangible right is evidenced in a document that itself provides the value for the intangible property, such as a stock certificate or promissory note.  *See*, *e.g.*, *id.*  Copied blueprints are plainly not within this narrow exception, and the conversion verdict should be reversed.

Although Plaintiffs have argued that Defendants copied their blueprints, the gravamen of Plaintiffs' conversion claim is use of the tire designs by Defendants to create a derivative infringing work, not the conversion of the underlying physical documents.  For example, during their opening and closing statements, Plaintiffs

repeatedly stressed that the case was about "defendants cop[ying] Mr. Fishman's blueprints, they copied the tires, they sold the tires." JA260; *see also* JA265-66, 1006-07. Plaintiffs' expert admitted that he had not calculated the "physical value" of the blueprints themselves, but only the profits the *Defendants* allegedly earned from the sale of tires allegedly based on the Plaintiffs' blueprints. JA759-60. And Plaintiffs argued that the value of the copy of the blueprints was the ability to make tires from the designs. JA929-30.

A district court applying Virginia law recently rejected a nearly identical conversion claim involving tangible documents containing proprietary data where the gravamen of the complaint was the misappropriation of information, designs and secrets. *See 3D Global Solutions, Inc. v. MVM, Inc.*, 552 F. Supp. 2d 1, 10 (D.D.C. 2008). After noting that Virginia does not recognize a cause of action for conversion of intangible property, the district court dismissed the claim, holding that "[i]t is apparent from the Complaint that the administrative packages had value only because they contained this proprietary data. *Because such data constitutes intangible property, 3D fails to state a claim for conversion under ... Virginia law.*" *Id.* (emphasis added). Here, too, the value of the copied blueprints was simply the intangible property, and thus the conversion claim must be dismissed.

In rejecting Defendants' arguments below, the district court appeared to believe that conversion encompasses intangible-property rights whenever a

physical document "expresses" that right.  JA988.  The Virginia Supreme Court, however, has never recognized such a broad exception.  Rather, it has merely observed that "many courts have recognized the tort of conversion in cases where intangible property rights *arise from or are merged* with a document, such as a valid stock certificate, promissory note, or bond."  *United Leasing*, 440 S.E.2d at 906 (emphasis added).  The common theme of such merged documents is that the original tangible document gives the intangible right its value—without the physical document, the intangible rights cannot be enforced.  The merger exception does not apply to documents, like blueprints, which merely express, but are not "merged" with, the intangible rights.

A district court for the Western District of Virginia, citing the Virginia Supreme Court, recently addressed this exact issue and found that no claim for conversion could lie—even as to original documents with proprietary information. *See Hinkle Oil & Gas, Inc. v. Bowles Rice McDavid Graff & Love LLP*, 617 F. Supp. 2d 447, 455 (W.D. Va. 2009), *aff'd*, 360 F. App'x 400, *cert. denied*, 131 S. Ct. 82 (2010).  In attempting to predict how the Virginia Supreme Court would address this issue, the district court relied on *United Leasing*.  *Hinkle*, 617 F. Supp. at 455.  *Hinkle* explained that stealing a document containing confidential and proprietary information does not constitute conversion under *United Leasing* because "[t]his information, albeit in document form, is not an intangible property

right *merged* in a document like a promissory note or a stock certificate." *Hinkle*, 617 F. Supp. at 455.

Any doubt that blueprints do not fall within the limited merger exception is more than resolved by Plaintiffs basing their conversion claim on the alleged copying or taking of a *copy* of the blueprints.[16]  Copies cannot be "merged" documents under Virginia common-law conversion.  Only the original can be "merged" with the intangible legal right.  Indeed, the common element of the "merged" document is that the original, tangible token is *necessary* for the enforcement of those rights:  one cannot enforce the legal right with only a copy of the merged document, and a claim for conversion of the original document is necessary in order to have any recovery at all.  *See*, *e.g.*, *Weaver Landfill, Inc. v. Eastman Envtl. Transp. Servs.*, No. 163821, 1998 WL 972335, at *1 (Va. Cir. Ct. Sept. 15, 1998) ("Possession of the original instrument is required for [one] to enforce a promissory note."); VA. CODE ANN. § 8.3A-309 (the holder of the instrument is entitled to enforce the instrument).  That is obviously not the case with the copied blueprints at issue in this case because the intangible rights can be enforced in other ways and the original document is not required.

---

[16] It is undisputed that the alleged conversion involved, at most, possessing a copy of the blueprints, as Plaintiffs retained a set of the blueprints after the alleged conversion and continued using them.  JA1217.

Plaintiffs' contention that copying blueprints constitutes conversion fails for a second, independent reason. As the Seventh Circuit explained, "[t]he possession of copies of documents—as opposed to documents themselves—does not amount to an interference with the owner's property sufficient to constitute conversion." *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 303 (7th Cir. 1990). That is because the owner is in no way being deprived of the use of the intellectual property; "[t]he only rub is that someone else is using it as well." *Id.* Here, as in *FMC*, Plaintiffs continued to use the blueprints after the alleged conversion.[17]

Even if a conversion claim in Virginia did extend to the intangible rights Plaintiffs sought to protect, any recovery based on that theory would be time-barred. Virginia's five-year statute of limitations applies only to injuries to property. VA. CODE ANN. § 8.01-243(B). A claim for harm to intangible rights, such as the business interests Plaintiffs seek to protect, is an "action for personal injuries" and is therefore subject to Virginia's two-year statute of limitations. *Id.* § 8.01-243(A); *cf. J.F. Toner & Son, Inc. v. Staunton Prod. Credit Ass'n*, 375 S.E.2d 530, 531 (Va. 1989) (fraud "invariably acts upon the person of the victim rather than upon property" and thus it is subject to two-year statute of

---

[17] This Court need not decide whether a claim for conversion seeking the return of copies might state a claim for conversion because Plaintiffs never sought the return of the physical documents.

43

limitation for personal injury).  Plaintiff's conversion claim, which accrued at the time of the alleged conversion in 2005, would therefore be time-barred as well.

### C.    There Is No Evidence Supporting Damages For Conversion.

Even were the conversion claim not preempted, and even assuming *arguendo* that a claim for copying blueprints was a cognizable conversion claim in Virginia, the jury's verdict still must be reversed.  The district court abused its discretion by sustaining the damages for conversion because there was no evidence of the fair-market value of the copied blueprints at the time and place of the alleged conversion.  Instead, the $26 million award was based entirely on Defendants' supposed profits from creating and selling tires derived from the copied blueprints.  This is not the appropriate measure of damages for a conversion claim.

The district court properly instructed the jury that "the measure of damages for conversion is the fair market value of the property at [the] time and place of the conversion."  JA1100; *see also*, *e.g.*, *Straley v. Fisher*, 10 S.E.2d 551, 553-54 (Va. 1940).  However, in rejecting the motion for judgment as a matter of law, the district court expressly acknowledged that "plaintiffs' damages evidence was based on … the profits [Defendants] earned … *and not the value at the time of the*

44

*conversion*." JA1194 (emphasis added). This acknowledgement alone demonstrates that the district court's decision must be overturned.[18]

Despite the total lack of evidence regarding the fair-market value *at the time and place of conversion*, the district court upheld those damages because: (1) Fishman testified that the value of the blueprints was essentially the value of his business, (2) Plaintiffs' damages expert testified that the ultimate value of the blueprints to Defendants was approximately $36 million, and (3) the parties understood the "potential value" of commercially exploiting these blueprints at the time of the conversion. JA1218. The district court found that, "[t]he jury … could have reasonably concluded that the fair market value of the blueprints at the time of the alleged conversion *included the full amount of profits* ultimately earned by defendants from their use." *Id.* (emphasis added).

The district court's attempt to connect Defendants' profits to the fair-market value at the time and place of conversion is flawed. Although disgorgement of profits is a recognized damages calculation in many circumstances, including copyright infringement, 17 U.S.C. § 504(b), it is not the measure of damages for conversion, *see*, *e.g.*, *Straley*, 10 S.E.2d at 553-54. The district court's view that one could "reasonably conclude[] that the fair market value of the blueprints at the

---

[18] Plaintiffs sought "$36,118,912, … the money that [they] believe that defendants have made on Mr. Fishman's tires." JA267. Plaintiffs' damages expert testified only about the profits that Defendants earned from selling the tires. *See*, *e.g.*, JA762-63.

time of the alleged conversion include[s] the full amount of profits ultimately earned by defendants from their use," JA1218, does not comport with any recognized view of fair-market value.

For example, the long-established definition of fair-market value for purposes of federal income tax is "the price at which the property would change hands between a willing buyer and a willing seller … both having reasonable knowledge of the relevant facts." *United States v. Cartwright*, 411 U.S. 546, 550-51 (1973). No rational buyer would pay for the copied blueprints what it believed to be the full amount of the "potential value" of using those copies. JA1218. Paying that price would mean that the buyer irrationally entered the transaction wishing to make no profit. *Cf. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986) ("For the investment to be rational, the [predator] must have a reasonable expectation of recovering, in the form of later monopoly profits, more than the losses suffered.").

Moreover, the district court's disgorgement-of-profits analysis fails to account for the fact that, at the time of the conversion, Fishman had continued use of (and did use) the blueprints and molds. That Fishman could continue to compete against the buyer of the designs is certainly "relevant" to what that buyer is willing to pay. *Cartwright*, 411 U.S. at 550-51. No rational buyer would pay the same for a non-exclusive license as it would for an exclusive license. Indeed,

46

this Court made exactly that point recently: "Under the Copyright Act, a copyright holder is entitled to both actual damages—the market price of the license—and disgorgement of the infringer's profits, *which might be immensely greater than the price of a license*." *Christopher Phelps & Assocs.*, 492 F.3d at 539.

Finally, Plaintiffs' argument and the district court's analysis both demonstrate that the value sought by Plaintiffs was the value of the intellectual property. Thus, the claim for conversion damages is plainly preempted. *See supra* pp. 33-35. Even were the conversion claim not preempted, the conversion damages would be limited to the costs of creating the copied blueprints—damages which Plaintiffs did not seek—and not the value of the intellectual property. *See supra* p. 38.

Moreover, the damages award must also be set aside because it rests on purely speculative "production plans" forecasts from 2006. *See* Dkt. Nos. 173, 174. Plaintiffs' expert, Dr. Nelson, conceded the speculative nature of basing damages over a four-year period (2006-2010) from forecasts taken from only an eight-month period starting in early 2006. The Linglong corporate representative, Wang, testified that, from 2006, Linglong did not reach its mining-tire-production goals because of factory-capacity issues, increasing costs, and the global recession. JA891. TyreX's corporate representative, Jasjeev Kandhari, also testified that the total gross sales of mining tires, without deduction of any costs or expenses, was

47

less than $11,000,000. JA774-75. Moreover, the Defendants' damages expert, Mr. Gardemal, testified that Dr. Nelson's figure, based on his 2006 eight-month forecast, was contradicted by the actual invoices from Linglong documenting the tires it sold to TyreX, the actual invoices from TyreX documenting the tires it purchased from Linglong, and information from TyreX's customer, Sandvik, documenting the tires it purchased from TyreX. JA937-38. Indeed, based on Dr. Nelson's own calculation, the invoices between Linglong Tire and TyreX came within four percent of each other and showed a total unit production over the entire 2006-2010 period of 6,283 mining tires for Linglong and 6,058 mining tires for TyreX—far below 11,500 mining tires for each year as Dr. Nelson improperly projected. Dkt. No. 289 at 17 (citing Dkt. No. 308, July 12, 2010 Trial Transcript at 975-77). The jury disregarded the clear and most credible evidence of gross profits, net profits and costs, and instead made its erroneous award based on Dr. Nelson's unreliable and unsupported projections.

### D. Copyright Liability Also Cannot Stand Because The Verdict And The Damages Award Impermissibly Rest In Part On The Copying Of Unregistered Designs.

The jury should not have considered five of the nineteen copyright claims because they were based on unregistered designs. Under 17 U.S.C. § 411(a), "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made

in accordance with this title." *See also*, *e.g.*, *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1239 (2010) ("the Copyright Act (Act) requires copyright holders to register their works *before suing for copyright infringement*" (emphasis added)); *see also*, *e.g.*, *Christopher Phelps & Assocs.*, 492 F.3d at 539.[19]

Plaintiffs bear the burden of proving registration under § 411 by a preponderance of the evidence. *Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 615 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 686 (2010). Such evidence may include the registration certificate (or in some Circuits evidence of a filed application, fees, and deposit) for the specific work in question. *See*, *e.g.*, *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1201 (11th Cir. 2009); *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 527-29 (S.D.N.Y. 2004), *abrogated in part by Reed Elsevier, Inc.*, 130 S. Ct. at 1239; *Geoscan, Inc. of Tex. v. Geotrace Techs., Inc.*, 226 F.3d 387, 393 (5th Cir. 2000).[20]

---

[19] Defendants objected to the general-verdict form, asking for a finding of liability as to each blueprint. JA993-94. The district court overruled this objection, and the jury rendered a general-liability verdict on copyright infringement. JA993-94, 1149. Defendants also asked for dismissal on this basis pursuant to Rule 50(a) and 50(b). Dkt. No. 256 at 17-19 ("Without evidence of registration of the drawings, a claim for copyright infringement cannot be maintained. *See* 17 U.S.C. § 411(a).").

[20] As the Ninth Circuit recently noted, there is currently a Circuit split over whether registration under the Copyright Act means filing an application with the Copyright Office or receiving a certificate of registration from the Copyright Office. *Cosmetic Ideas*, 606 F.3d at 615 & nn.3 & 4. This Court does not appear

Plaintiffs failed to prove registration for five of the nineteen blueprints at issue. *See* JA928 (explaining that there were nineteen blueprints at issue). From the outset, Plaintiffs conceded that Fishman did not register all of the copied tire designs. *See* JA151. Fishman also testified that he did not register all the blueprints. JA381. A comparison of the registration certificates with the blueprints introduced at trial reveals that five of the blueprints on which the jury based its copyright verdict were not registered—JA1301 (ALPHA0081035); JA1306 (ALPHA0081049); JA1304 (ALPHA0081175); JA1307 (ALPHA0081177); and JA1302 (ALPHA0081044). *Compare* JA67-130 (Alpha's registration certificates and unfiled registration applications) *with* JA1286-1309 (the allegedly copied blueprints). But Plaintiffs' damages expert based his damages on Defendants' profits from all of the tire designs, including the five that were unregistered. JA752-53, 1401.

Because the copyright-infringement verdict was impermissibly based on five blueprints which were not registered and because the damage calculation was likewise based on Defendants' profits from copying these unregistered blueprints, the verdict should be reversed and the case remanded for a new trial limited to the blueprints for which Plaintiffs presented evidence of registration.

---

to have weighed in on this debate. Under either theory, Plaintiffs have failed to register five of the blueprints.

## IV.  THE DAMAGES AWARD AND THE CONSPIRACY VERDICT MUST BE VACATED BECAUSE EACH RESTS ON DISMISSED THEORIES OF LIABILITY.

The Supreme Court and this Court have long held that a jury's liability determination or a damages award reflected in a general verdict must be set aside whenever the verdict may have rested on an impermissible or unsupported basis. Here, the district court itself, post-verdict, set aside one of the five claims that may have supported the damages award and one of the four claims that may have supported the finding of conspiracy liability.  Thus, the damages judgment and the conspiracy claim cannot be upheld.  A similar result is independently required if this Court sets aside any of the remaining theories of liability supporting the damages award or conspiracy finding.

The established "rule is that because of the impossibility of knowing but what the jury's verdict rested on the legally erroneous theory, such a general verdict may not stand as the basis for judgment."  *Flowers v. Tandy Corp.*, 773 F.2d 585, 591 (4th Cir. 1985); *see also*, *e.g.*, *Ely v. Blevins*, 706 F.2d 479, 480 (4th Cir. 1983).  This rule follows the Supreme Court's long-standing direction that a general verdict that may have been based on an improper theory of liability must be reversed.  *See*, *e.g.*, *Maryland v. Baldwin*, 112 U.S. 490, 493 (1884); *Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co.*, 370 U.S. 19, 29-30 (1962).  This Court has equally applied the rule to invalidate general verdicts of damages

51

where damages are unallocated among different theories of liability: "The jury's award of damages cannot stand if either of the two underlying claims is reversed because the general verdict form did not apportion damages between the claims …." *Barber v. Whirlpool Corp.*, 34 F.3d 1268, 1278 (4th Cir. 1994); *id.* at 1278 (setting aside jury's general award of $200,000, based on finding of liability for intentional infliction of emotional distress and malicious prosecution, once emotional distress claim dismissed); *see also Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998); *Flowers*, 773 F.2d at 591.

## A.    The Damages Award Must Be Vacated.

These principles require that the damages award be set aside. The general verdict indisputably did not apportion damages among the five claims and could have rested on any one of them. JA1152. After the verdict was rendered, the district court ruled that no evidence supported, and entirely dismissed, one of the five claims, based on registered trademark, and it ruled that no evidence supported the unregistered trademark claims with respect to nine of the eleven marks at issue. JA1223-25. Thus, on its face, the damages award must be set aside and a new trial held on damages. "[B]ecause the jury did not apportion its compensatory damages award among theories of liability, calling into question the validity of plaintiffs' recovery on any one theory imperils the entire damage award." *Broussard*, 155 F.3d at 344; *see also*, *e.g.*, *Barber*, 34 F.3d at 1278.

52

The district court reasoned that the established rule did not apply in this case because the measure of damages for all five claims was the same—the disgorgement of profits. *See id.*[21] This is wrong for two reasons. As a matter of law, the possibility of the invalid basis for the verdict cannot be deemed harmless, and this speculation is exactly what *Barber* and its progeny forbid when one claim supporting a general verdict is later held to be erroneous. *See supra* pp. 51-52.

The district court's rationale was also wrong as a matter of fact and logic. As the jury instructions and underlying theories of damages liability make clear, the jury may well have found—and indeed was invited to find—different damages amounts under the different theories of liability. The jury was not asked simply to determine Defendants' "profits." Instead, for the copyright claim, the district court instructed the jurors that "[y]ou may make an award of the defendants' profits only if you find the plaintiffs showed a causal relationship between the [copyright]

---

[21] The district court also invoked two *unpublished* decisions to support its conclusion, but both actually reflect the general principles described above and provide no support for the district court's conclusion. *Johnson v. Wal-Mart Stores, Inc.*, No. 98-2087, 1999 WL 314660, at *1 (4th Cir. May 19, 1999), involved two claims supporting judgment that the district court found supported by the evidence but, as to one, also found would permit double recovery. The Court specifically reaffirmed the *Barber* rule but found it not to apply because the verdict could not have rested on an impermissible ground. *Id.* at *4. *Henderson v. Winston*, No. 94-2071, 1995 WL 378602, at *1 (4th Cir. June 27, 1995), involved simply a single claim of liability and presented no issue of the verdict resting on an impermissible ground. Indeed, the Court expressly acknowledged that the principles outlined above would have applied had one of multiple grounds for a verdict been set aside. *Id.* at *5 (citing *Sunkist*, 370 U.S. at 28-30).

53

infringement and profits generated indirectly from the [copyright] infringement." JA1108. For the trademark claim, the district court instructed that "the plaintiffs are entitled to any profits earned by the defendants that are attributable to the [trademark] infringement or unfair competition which plaintiffs prove by a preponderance of the evidence." JA1124-25. And, of course, the jury's damages assessment for this claim likely rested largely on the registered marks and the nine unregistered marks the district court itself later found to be without evidentiary basis. Finally, the damages instruction for the conversion claim was simply "the fair market value of the property at the time and place of the conversion." JA1100. As discussed above, *see supra* pp. 44-48, this value is appropriately zero under the evidence directed to the value of the blueprint itself, and the jury may well have reached that conclusion.[22] For each claim, the jury could have found that relevant damages were non-existent or reflected only a small subset of the profits identified by Plaintiffs' expert.

At the same time, testimony to the jury regarding damages related to Plaintiffs' trademarks could have been the sole basis for all or a portion of the damages award. Fishman, Plaintiffs' chief fact witness, testified about the trademarks. *See*, *e.g.*, JA356-67. Likewise, Plaintiffs' damages expert testified

---

[22] Because there is no way to determine what amount of damages the jury attributed to the conversion claim, it is irrelevant that the statutory period is longer for this claim than for others.

about Defendants' mining-tire profits, which Plaintiffs argued must be disgorged as a remedy for the trademark claims.  JA669-71, 691-92, 695-96, 1347. Defendants' expert also testified about the profits that are attributable to the trademarks.  JA946.  Plaintiffs, in closing, emphasized that their case was about trademark infringement as well as copyright infringement and other claims. JA1011.  Defendants' closing also discussed Plaintiffs' trademark claims. JA1049-55.

Thus it is entirely possible that some, if not all, of the damages award rested exclusively on a finding of harm to trademark.  Indeed, this conclusion is required if the trademarks have *any* market value that is separate from the copyrights. Plaintiffs conceded as much in their complaint, alleging that these trademarks embody "Plaintiffs' good name and reputation … and Plaintiff's right to public recognition and credit as the true source of the underground mining tires."  JA176. The value of such goodwill, which is the profit attributable to the trademarks, is distinct from the value of the tire designs, which is the profit attributable to the copyrights.[23]

---

[23] Furthermore, Plaintiffs' explanation for the jury's reduction in damages concedes that the trademark claim might have had an independent effect on the award.  JA1152.  According to Plaintiffs, the jury reduced the damages award to "account for the actionable timeframes for the copyright *and trademark infringement claims*."  Dkt. No. 258 at 8 (emphasis added).

55

### B. The Conspiracy Verdict Must Be Vacated.

For the same reasons, the jury's general verdict on conspiracy also must be set aside. The jury was instructed that: "You may find defendants liable for conspiracy to commit one, two, or all three of the underlying torts." JA1098; *see*, *e.g.*, JA1096-97. There is simply no basis for knowing what formed the basis of the jury's conspiracy liability finding—conversion, copyright infringement, trademark infringement, unfair competition, or some or all of these torts. The district court reasoned that no new trial on that claim was required because "the jury could not have found a conspiracy to commit trademark infringement without also finding a conspiracy to commit copyright infringement." JA1240-41.[24] But this conclusion is pure supposition and is contrary to law. "As was stated of a general verdict in *Maryland v. Baldwin*, 112 U.S. at 493, '[I]ts generality prevents us from perceiving upon which plea they found. If, therefore, upon any one issue error was committed, either in the admission of evidence or in the charge of the court*, the verdict cannot be upheld*.'" *Sunkist*, 370 U.S. at 30 (emphasis added); *see also*, *e.g.*, *Ely*, 706 F.2d at 780 ("This means that if defendants' motion for a directed verdict as to either count should have been sustained, *there must be a new trial*." (emphasis added)). "The rationale for the *Sunkist* rule … is that a reviewing

---

[24] Of course, if this Court sets aside claims related to copyright, conspiracy to commit copyright, conversion, and/or conspiracy to commit conversion, then the conspiracy verdict fails not only the *Sunkist* and *Barber* lines of cases, but even the district court's own analysis.

court cannot be certain that the legal basis for the verdict was valid, meaning prejudice is necessarily established." *Henderson*, 1995 WL 378602, at *5. Accordingly, the conspiracy verdict must be reversed.

## CONCLUSION

For the reasons set forth above, this case should be remanded to the district court with directions to dismiss the complaint and enter judgment for the Defendants.

## REQUEST FOR ORAL ARGUMENT

Defendants-Appellants hereby request oral argument in this appeal.

Respectfully submitted,

    /s/ *R. Ted Cruz*

Peter D. Keisler
Richard Klingler
James C. Owens, Jr.
Bryson Love Bachman
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 736-8000
Facsimile:   (202) 736-8711

R. Ted Cruz
  *Counsel of Record*
Howard M. Radzely
William S.W. Chang
Shelly M. Doggett
MORGAN, LEWIS & BOCKIUS
  LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  (202) 739-3000
Facsimile:   (202) 739-3001

*Counsel for Al Dobowi Ltd., Al Dobowi Tyre Co., LLC, TyreX International, Ltd., TyreX International Rubber Co., Ltd.*

*Counsel for Shandong Linglong Rubber Co., Ltd., n/k/a Linglong Group Co., Ltd., and Shandong Linglong Tire Co., Ltd.*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)</u>

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. Appellants' Opening Brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 13,832 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 14-point Times New Roman font.


Date:  March 28, 2011      */s/ R. Ted Cruz*_____
             R. Ted Cruz

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2011, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

 /s/ *R. Ted Cruz*
R. Ted Cruz